**NOT FOR PUBLICATION**

```
                UNITED STATES DISTRICT COURT
                   DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| KARIM FARUQ, | |
| Plaintiff, | Civil No. 11-5987 (JBS) |
| v. | |
|  | **OPINION** |
| MARY MCCOLLUM, et al., | |
| Defendants. | |

**APPEARANCES**:

    KARIM FARUQ, Plaintiff pro se
    Reg. No. # 27350-037
    FCI Fort Dix
    P.O. Box 2000
    Fort Dix, New Jersey 08640

**SIMANDLE**, Chief Judge

    Plaintiff, Karim Faruq, a federal inmate confined at the FCI Fort Dix in Fort Dix, New Jersey, at the time he submitted the above-captioned Complaint for filing, brings this action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).  Accordingly, this Court must review the Complaint, pursuant to 28 U.S.C. § 1915A, to determine whether the Complaint should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that this action should be dismissed.

I.   BACKGROUND

Plaintiff, Karim Faruq, brings this civil rights action against the following defendants: Mary McCollum, Case Manager at FCI Fort Dix; D. Schaaf, Unit Manager at FCI Fort Dix; and Robert Donahue, Case Manager Coordinator at FCI Fort Dix.  (Complaint, Caption and § Defendants).  The following factual allegations by plaintiff are taken from the Complaint, and are accepted for purposes of this screening only.

Plaintiff alleges, in 1990, he was charged and ultimately convicted in the United States District Court for the District of Maryland with conspiracy to distribute and possess with intent to distribute heroin and cocaine, in violation of 21 U.S.C. § 846; income tax evasion, in violation of 21 U.S.C. § 7201; money laundering and aiding and abetting, in violation of 18 U.S.C. § 1956(a)(1)(B)(1) and 18 U.S.C. § 2; and distribution of a mixture containing heroin, in violation of 21 U.S.C. § 841(a).  He was sentenced to serve 385 months in federal prison to be followed by five years supervised release.

In 1994, Plaintiff was initially designated to United States Penitentiary ("USP") Terre Haute in Indiana, and then transferred to USP Allenwood, Pennsylvania.  Plaintiff states that he was scored as "high severity" at his first custody classification.

In 1996, Plaintiff was transferred to Federal Correctional Institution ("FCI") Cumberland, Maryland.  In 2000, Plaintiff's custody classification was reduced to moderate severity and he

2

was transferred to FCI Fort Dix in New Jersey. At FCI Fort Dix, a Management Variable was placed on Plaintiff for greater security because his custody points were five, which is minimum security level, but Plaintiff had more than ten years remaining on his sentence.

Plaintiff alleges that the entire time he was confined at FCI Fort Dix, his offense level remained as moderate severity at his custody classification reviews. In December 2009, Plaintiff allegedly became eligible for a transfer to a minimum security facility "camp." Accordingly, Plaintiff submitted requests to McCollum, Schaaf and Donahue for transfer to a minimum security camp facility under the Federal Bureau of Prisons ("BOP") Program Statement ("PS") 5100.08 and 18 U.S.C. § 3621(b).

In February 2010, Schaaf told Plaintiff that he had instructed McCollum to process Plaintiff's paperwork for a transfer to a minimum security camp. Several months later, in April 2010, McCollum summoned Plaintiff to her office to question Plaintiff's prior custody classification reviews and his motivation for complaining to McCollum's supervisors, Schaaf and Donahue. In May 2010, McCollum raised Plaintiff's offense level from moderate severity to greatest severity and reinstated a "PSF" that had earlier been removed from Plaintiff's classification before McCollum had become Plaintiff's case manager.

Plaintiff alleges that McCollum's actions in raising his custody classification level and adding a PSF were malicious and intentional retaliation against Plaintiff for having complained to Schaaf and Donahue.  He also alleges that McCollum's actions constituted unlawful "selective treatment" because Plaintiff is an African American and Muslim.  Plaintiff has written to his U.S Senator and Congressman to complain about this treatment.

Plaintiff further alleges that after he told Schaaf and Donahue about McCollum's actions and that Plaintiff intended to file an administrative remedy, they became hostile and conspired with each other to "uphold the raised offense level to prevent [Plaintiff's] transfer to a lower-security facility."

Plaintiff seeks a declaratory judgment that defendants have violated his First Amendment rights and his right to equal protection under the Fifth Amendment.  He also seeks compensatory and punitive damages in excess of $70,000.00.

On or about April 24, 2012, Plaintiff filed an amended Complaint to this action.  (Docket entry no. 3).  In his amended Complaint, Plaintiff adds general allegations that defendants McCollum, Schaaf and Donahue have continued a pattern of discrimination and retaliation against him on the basis of race, color and religion because Plaintiff has engaged in the constitutionally protected activity of filing administrative grievances and writing to his U.S. Senator and Congressional representative.  He alleges that defendants have intentionally

4

identified Plaintiff as a leader and organizer of a drug organization so as to deny his transfer to a minimum security facility. Plaintiff alleges that he was not a leader and organizer of a drug ring, but rather a wholesaler which does not meet the PSF greatest severity criteria.

This Court takes judicial notice of Plaintiff's earlier habeas action, Faruq v. Zickefoose, Civil No. 10-6768 (NLH), which was dismissed on October 3, 2011, shortly before Plaintiff filed this action. Plaintiff's earlier action involved a challenge as to the custody classification level issue raised in the instant action. While the Court had dismissed the habeas action for lack of jurisdiction, finding that it was more appropriately a declaratory judgment action or civil rights action under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), the administrative record pertaining to this claim was provided and proves relevant to the instant action. Accordingly, the record will be incorporated in this action for purposes of reviewing Plaintiff's claims.

## II. STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity. The Court is required to identify cognizable claims and to sua sponte dismiss

5

any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  This action is subject to sua sponte screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) an § 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).

The Supreme Court refined the standard for summary dismissal of a complaint that fails to state a claim in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  Citing its opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555), the Supreme Court held that, to prevent a summary dismissal, a civil complaint must now allege "sufficient factual matter" to show that the claim is facially plausible.  This then "allows the court to draw the

6

reasonable inference that the defendant is liable for the misconduct alleged." Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009)(citing Iqbal, 556 U.S. at 676). The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible. See id. at 678-79; see also Twombly, 505 U.S. at 555, & n. 3; Warren Gen. Hosp. v.. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011). "A complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 211 (citing Phillips v. County of Allegheny, 515 F.3d 224, 234–35 (3d Cir. 2008). See also Argueta v. .S Immigration & Customs Enforcement, 643 F.3d 60, 73 (3d Cir. 2011); Bistrian v. Levi, __ F.3d __, 2012 WL 4335958, *8 (3d Cir. Sept. 24, 2012)(allegations that are no more than conclusions are not entitled to the assumption of truth; a court should "look for well-pled factual allegations, assume their veracity, and then 'determine whether they plausibly give rise to an entitlement to relief.'")(quoting, Iqbal, 556 U.S. at 679).

### III.   ANALYSIS

A.  Equal Protection Claim

Plaintiff asserts that defendants' conduct in revising and increasing his custody classification level violated his right to equal protection of the law as guaranteed under the Fifth Amendment. He generally alleges that defendants have continued a pattern of discrimination and retaliation against him on the

basis of race, color and religion because Plaintiff has engaged in the constitutionally protected activity of filing administrative grievances and writing to his U.S. Senator and Congressional representative.

The concept of equal protection, as embodied in the Due Process Clause of the Fifth Amendment, see Bolling v. Sharpe, 347 U.S. 497 (1954), has been construed to implicitly include an equal protection guaranty generally as broad as that of the Fourteenth Amendment, applicable to the states.  See United States v. Milan, 304 F.3d 273, 281 n. 6 (3d Cir. 2002)(citing United States v. Leslie, 813 F.2d 658 (5th Cir. 1987)), cert. denied, 538 U.S. 1024 (2003).

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985)(citing Plyler v. Doe, 457 U.S. 202, 216 (1982)).  Thus, to state a claim under the Equal Protection Clause, a litigant must allege that: (a) he is a member of a protected class; and (b) he was treated differently from similarly situated inmates.  See City of Cleburne, 473 U.S. at 439; Williams v. Morton, 343 F.3d 212, 221 (3d Cir. 2003); Jean-Pierre v. Bureau of Prisons, 2012 WL 4076113 at *4 (3d Cir. Sept. 18, 2012).  If the litigant does not claim membership in a

protected class, he must allege arbitrary and intentional discrimination in order to state an equal protection claim. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). Specifically, he must state facts showing that: "(1) the defendant[s] treated him differently from others similarly situated, (2) the defendant[s] did so intentionally, and (3) there was no rational basis for the difference in treatment." Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006).

Here, Plaintiff alleges generally that defendants are discriminating against him based on race and religion. However, he has made no allegations that he was treated differently than others that are similarly situated.[1] Accordingly, Plaintiff has failed to plead a facially plausible equal protection claim. See City of Cleburne, 473 U.S. at 439; Village of Willowbrook, 528 U.S. at 564.

Proof of disparate impact alone, however, is not sufficient to succeed on an equal protection claim; a plaintiff also must prove that the defendant intended to discriminate. See Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 264-66 (1977); Washington v. Davis, 426 U.S. 229,

---

[1] Furthermore, as discussed in Part III.B, below, the record shows ample justification for the decision to elevate Plaintiff's classification to Greatest Public Safety Factor based on Plaintiff's crime of conviction and his leadership role in it. Plaintiff does not allege any grounds for asserting that this classification decision was different from others who are similarly situated. Thus, his equal protection claim is deficient.

9

242, 244-45 (1976).  Thus, discriminatory intent must be a motivating factor in the decision, even though it need not be the sole motivating factor.  See Village of Arlington Heights, 429 U.S. at 265-66.

Once this intentional disparity in treatment is shown, a court will proceed to determine whether the disparity can be justified under the requisite level of scrutiny.  See City of Cleburne, 473 U.S. at 439-40; Plyler, 457 U.S. at 216-17.  In testing the validity of an official action that is alleged to deny equal protection, the action "is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." City of Cleburne, 473 U.S. at 439-40.  The general rule gives way, however, when a statute classifies by race, alienage or national origin since these classifications "are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest."  Id. at 440.

It is not clear what "pattern of discrimination" Plaintiff was subjected to by defendants.  Plaintiff references that his custody classification level changed in May 2010, after Plaintiff had asked to be transferred to a minimum security camp.  Plaintiff alleges that this action by defendants was malicious, intentional and motivated by Plaintiff's attempts to file administrative remedies to correct the problem and by writing to his Senate and Congressional representatives.  This conclusory

statement is not sufficient to state a claim, as required by Iqbal.  See Iqbal, 556 U.S. at 679.  Accordingly, this equal protection claim will be dismissed without prejudice.  However, if Plaintiff believes that he can assert sufficient plausible facts to show an equal protection violation, then he may move for leave to file an amended complaint accordingly.[2]

B.  Retaliation

Next, Plaintiff asserts a First Amendment retaliation claim by alleging that defendants changed his custody classification level solely in retaliation against Plaintiff for filing administrative grievances and writing letters to his Senate and Congressional representatives to remedy the problem.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution ... ."  White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990); see also Bistrian, 2012 WL 4335958 at *18; Mitchell v. Horn, 318 F.3d 523, 529-31 (3d Cir. 2003); Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001); Allah v. Seiverling, 229 F.3d 220, 224-26 (3 Cir. 2000).  To prevail on a retaliation claim,

---

[2] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed.1990)(footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.

11

plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action.  Rauser, 241 F.3d at 333 (3d Cir. 2001)(quoting Allah, 229 F.3d at 225.

   In this case, Plaintiff can not demonstrate the third factor necessary to support a retaliation claim.  As demonstrated in Plaintiff's earlier habeas action, Civil No. 10-6768 (NLH), there was no suggestion that the increase in Plaintiff's custody classification level was due to any retaliation against Plaintiff for having filed an administrative remedy.  In fact, the record in that action shows that Plaintiff's custody classification level was changed before he filed his administrative remedy and that it was based on information contained in Plaintiff's presentence report that apparently was overlooked by earlier institutional staff where Plaintiff previously was incarcerated. Indeed, in his administrative remedy, the change in Plaintiff's custody status was explained on August 9, 2010, by Warden Donna Zickefoose as follows:

>    A review of this matter reveals you were originally scored with a Greatest Severity as noted on your security designation data form dated January 5, 1994.  During your most recent program review meeting, you requested placement in a Minimum level facility.  Your case manager reviewed

> your central file materials to determine your appropriateness and noticed your offense conduct behavior met the criteria for Greatest Severity, not Moderate. Specifically, your Presentence Investigation Report identifies you as a leader or organizer of an organization that included numerous individuals and was responsible for distributing 3.71 kilograms of heroin and five kilograms of cocaine. You organized and directed the organization, had the greatest decision making authority and received the largest share of the profits. While you claim you worked for a high level supplier, the PSI is clear that your organization received its drugs from a supplier and then distributed those drugs for your organization's benefit. Program Statement 5100.08, Appendix A, page 1, and Appendix A, page 5, dated September 12, 2006, are clear that your role in the offense and the quantity of drugs involved are best classified as Greatest. Although your severity was reduced from Greatest to Moderate during your confinement at USP Allenwood, Pennsylvania, it is unclear why that was done and there is no documentation in your file to support the reduction. Your offense severity is appropriately classified as Greatest. Accordingly, your request is denied.

See <u>Faruq v. Zickefoose</u>, Civil No. 10-6768 (NLH), October 3, 2011 Opinion, at pg. 4, (Docket entry no. 8).

Further, in Plaintiff's Regional Administrative Remedy Appeal, on September 17, 2010, the Regional Director's response showed that Plaintiff's PSF and custody classification was based on valid, verifiable information, as follows:

> You appeal the response from the Warden at FCI Fort Dix regarding the application of the Greatest Severity Public Safety Factor (PSF). You contend you were not a leader/organizer of the drug conspiracy. You further contend this PSF was removed previously. As relief, you request all staff who had access to your classification materials be interviewed regarding this matter.
>
> Program Statement 5100.08, <u>Security Designation and Custody Classification Manual</u>, permits staff to use professional judgment within specific guidelines in making classification decisions. To accomplish this, staff must consider all

13

> available information regarding the inmate to include security/custody classification, release residence, institution population levels, judicial recommendations, safety concerns and any information provided by other law enforcement agencies.  The application of a PSF overrides security point scores to ensure the appropriate security level is assigned to an inmate, based on his or her demonstrated current or past behavior.
>
> Records indicate you are serving 385 months for a Narcotics Conspiracy.  Your Presentence Report (PSR) identifies you as the organizer or leader in the instant offenses.  The PSR documents the amount of narcotics involved in the offenses were converted into the marijuana equivalent and utilized for computation purposes.  Specifically, you are responsible for 3,705 kilograms of marijuana equivalent.  In conjunction with your leadership role in the instant offenses, this amount of narcotics requires the Greatest Severity PSF be applied.  Based on this information, you are appropriately assigned the Greatest Severity PSF and are inappropriate for placement at a minimum security facility.  Although you contend this decision is erroneous, you have failed to provide any evidence to support your claims.  Accordingly, your appeal is denied.

See Faruq v. Zickefoose, Civil No. 10-6768 (NLH), October 3, 2011 Opinion, at pg. 5, (Docket entry no. 8).

Therefore, Plaintiff can not demonstrate that defendants' actions were purposeful retaliation against him for having filed administrative grievances.  Rather, Plaintiff's case manager, defendant McCollum, actually reviewed Plaintiff's central file materials to determine his appropriateness for transfer to a minimum security facility, as requested by Plaintiff, and noticed from legitimate and objective records, namely, Plaintiff's presentence report, that his offense conduct behavior met the criteria for Greatest Severity, not Moderate, and that there was no explanation or documentation on file to support the earlier reduction in custody classification level.  Accordingly, this

14

retaliation claim will be dismissed for failure to state a claim upon which relief may be granted.

IV. CONCLUSION

For the reasons set forth above, the Complaint will be dismissed without prejudice, in its entirety, as against the named defendants, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim at this time.  An appropriate order follows.


                                         **s/ Jerome B. Simandle**
                                         JEROME B. SIMANDLE, Chief Judge
                                         United States District Court
Dated: **October 18, 2012**