**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY


KARIM FARUQ, :
: Civil Action No. 11-5987 (JBS)
:
      Plaintiff, :
:
    v. : **OPINION**
:
MARY MCCOLLUM, et al., :
:
      Defendants. :


**APPEARANCES**:

    KARIM FARUQ, Plaintiff pro se
    Reg. No. # 27350-037
    FCI Fort Dix
    P.O. Box 2000
    Fort Dix, New Jersey 08640

**SIMANDLE**, Chief Judge

    Plaintiff, Karim Faruq, a federal inmate confined at the FCI Fort Dix in Fort Dix, New Jersey, submitted a motion to re-open his case and file another amended Complaint (See Dkt. # 6) in the above-captioned matter, in response to this Court's October 18, 2012 Opinion and Order that had dismissed without prejudice Plaintiff's civil action, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim. (See Dkt. ## 4, 5.) The Court directs the Clerk of the Court to re-open this case to allow for review of Plaintiff's new amended Complaint, pursuant

to 28 U.S.C. § 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the amended Complaint should be dismissed at this time.

I. BACKGROUND

In his initial Complaint, Plaintiff alleges that he became eligible for a transfer to a minimum security facility "camp" in December 2009. At that time, Plaintiff submitted requests to Defendants Mary McCollum, Case Manager at FCI Fort Dix; D. Schaaf, Unit Manager at FCI Fort Dix; and Robert Donahue, Case Manager Coordinator at FCI Fort Dix, for transfer to a minimum security camp facility under the Federal Bureau of Prisons ("BOP") Program Statement ("PS") 5100.08 and 18 U.S.C. § 3621(b). Thereafter, in February 2010, Defendant Schaaf allegedly told Plaintiff that he had instructed Defendant McCollum to process Plaintiff's paperwork for a transfer to a minimum security camp.

Several months later, in April 2010, McCollum allegedly summoned Plaintiff to her office to question Plaintiff's prior custody classification reviews and his motivation for complaining to McCollum's supervisors, Schaaf and Donahue.

Then, in May 2010, McCollum raised Plaintiff's offense level from moderate severity to greatest severity and reinstated a "PSF" that had earlier been removed from Plaintiff's classification before McCollum had become Plaintiff's case manager.

Plaintiff alleges that McCollum's actions in raising his custody classification level and adding a PSF were malicious and intentional retaliation against Plaintiff for having complained to Schaaf and Donahue. He also alleges that McCollum's actions constituted unlawful "selective treatment" because Plaintiff is an African American and Muslim. Plaintiff wrote to his U.S Senator and Congressman to complain about this treatment.

Plaintiff further alleges that after he told Schaaf and Donahue about McCollum's actions and that Plaintiff intended to file an administrative remedy, they became hostile and conspired with each other to "uphold the raised offense level to prevent [Plaintiff's] transfer to a lower-security facility."

On April 24, 2012, Plaintiff filed an amended Complaint to this action. (Dkt. # 3.) In his amended Complaint, Plaintiff adds general allegations that Defendants McCollum, Schaaf and Donahue have continued a pattern of discrimination and retaliation against him on the basis of race, color and religion because Plaintiff had engaged in the constitutionally protected

3

activity of filing administrative grievances and writing to his U.S. Senator and Congressional representative. He alleges that Defendants have intentionally identified Plaintiff as a leader and organizer of a drug organization so as to deny his transfer to a minimum security facility. Plaintiff alleges that he was not a leader and organizer of a drug ring, but rather a wholesaler, which does not meet the PSF greatest severity criteria.

In screening both the Complaint and amended Complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, the Court took judicial notice of Plaintiff's earlier habeas action, *Faruq v. Zickefoose*, Civil No. 10-6768 (NLH), which was dismissed on October 3, 2011, shortly before Plaintiff filed this action. Plaintiff's earlier habeas action involved a challenge to his custody classification level as raised in the instant action. While the Court had dismissed the habeas action for lack of jurisdiction, finding that it was more appropriately a declaratory judgment action or civil rights action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the administrative record pertaining to Plaintiff's claim herein was provided and deemed relevant to the instant action. Accordingly, this Court incorporated the record from the habeas action for purposes of reviewing

4

Plaintiff's claims.  (*See* Dkt. # 5, October 18, 2012 Opinion at 5.)

With regard to Plaintiff's equal protection claim, this Court found that Plaintiff's allegations were conclusory under *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and dismissed the claim without prejudice to Plaintiff filing an amended Complaint with sufficient plausible facts to support an equal protection claim.  (Dkt. # 5, Oct. 18, 2012 Op. at 10-11.)  As to Plaintiff's retaliation claim, the Court dismissed the claim because Plaintiff did not allege facts to show that Defendants' actions were purposeful retaliation against him for having filed administrative grievances.  Relying on the administrative record provided in *Faruq v. Zickefoose*, Civil No. 10-6768 (NLH), this Court found that Defendant McCollum had "actually reviewed Plaintiff's central file materials to determine his appropriateness for transfer to a minimum security facility, as requested by Plaintiff, and noticed from legitimate and objective records, namely, Plaintiff's presentence report, that his offense conduct behavior met the criteria for Greatest Severity, not Moderate, and that there was no explanation or documentation on file to support the earlier reduction in custody classification level."  (Dkt. # 5, Oct. 18, 2012 Op. at 14.)

On November 8, 2012, Plaintiff filed a second amended Complaint reasserting his equal protection claim against Defendants, which is the subject of this motion to re-open his case, and alleging new facts to support his claim of disparate treatment. (Dkt. # 6-1.) For instance, Plaintiff now alleges that, in April 2010, when he met with Defendant McCollum, McCollum asked Plaintiff if he had any paperwork to confirm the removal of his prior Public Safety Factor ("PSF"). Plaintiff responded that he did not have any paperwork, but told McCollum that another inmate, Paul Winestock, #27813-037, was in a similar situation and went to a minimum security facility "camp."[1] (*Id.*, ¶ 6.)

Plaintiff also alleges that in May 2010, McCollum told Plaintiff that she raised his offense level and placed a PSF against him for "going over her head." At that time, Plaintiff allegedly explained to McCollum that his presentence report identified Plaintiff's conduct as a "wholesaler" and "not an organizer/leader." (*Id.*, ¶ 7.)

---

[1] Plaintiff alleges that, in 1995, he and inmate Winestock were housed at USP Allenwood together. That same year, a new policy was implemented, which resulted in a special custody classification team for inmates with certain leadership roles in drug offenses. This team allegedly served to remove the PSF from Plaintiff and other similarly situated inmate to conform to the new policy, Bureau of Prisons ("BOP") Policy Statement 5100.06. (*Id.*, ¶ 9.)

Plaintiff also alleges that he reminded Defendant Donahue that inmate Winestock's situation was similar to Plaintiff's case, and that Donahue had been "personally involved in Winestock's" transfer to a minimum security camp. Plaintiff also purportedly told Donahue that Winestock's offense level was never raised to "Greatest Severity" like Plaintiff. Despite this alleged comparison to Winestock, Donahue told Plaintiff that he would adhere to McCollum's decision and informed Plaintiff that his administrative remedies would not alter Donahue's decision. (*Id.*, ¶ 8.)

## II. STANDARD OF REVIEW

### A. Standards for *Sua Sponte* Dismissal

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding *in forma pauperis* or seeks redress against a governmental employee or entity. The Court is required to identify cognizable claims and to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. Accordingly, Plaintiff's

7

second amended Complaint is subject to *sua sponte* screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) and § 1915A.

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." However, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To prevent summary dismissal, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible which "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir.2009) (citation omitted).

The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must demonstrate that the allegations of the complaint are plausible. *See Iqbal*, 556 U.S. at 678-79; *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011). "A complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 211 (citation omitted). Thus, factual allegations must be more than speculative, but the pleading

8

standard "is not akin to a 'probability requirement.'" *Covington v. International Association of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556). That said, in light of the Plaintiff's pro se status, the Court liberally construes the complaint in his favor. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *see also Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011) ("Pro se filings ... must be liberally construed.").

B. *Bivens* Actions

Plaintiff brings this action pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). In *Bivens*, the Supreme Court created a federal counterpart to the remedy created in 42 U.S.C. § 1983. *Id.*, 403 U.S. at 389; *see also Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004) (stating that *Bivens* actions are the federal counterpart to Section 1983). In order to state a claim under *Bivens*, a plaintiff must allege: (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by a person acting under color of federal law. *See Couden v. Duffy*, 446 F.3d 483, 491 (3d Cir. 2006) (stating that under Section 1983 "an individual may bring suit for damages against any person

9

who, acting under color of state law, deprives another individual of any rights, privileges, or immunities secured by the United States Constitution or federal law," and that *Bivens* held that a parallel right exists against federal officials); *see also Collins v. F.B.I.*, Civ. No. 10-3470, 2011 WL 1627025, at *6 (D.N.J. Apr. 28, 2011) ("The Third Circuit has recognized that *Bivens* actions are simply the federal counterpart to § 1983 claims brought against state officials and thus the analysis established under one type of claim is applicable under the other."). Under *Bivens*, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Iqbal*, 556 U.S. at 676.

### III.  DISCUSSION

As recounted above, the Court had dismissed Plaintiff's Fifth Amendment equal protection claim because Plaintiff had not supported his general claim with factual allegations that he received treatment different than that received by other similarly situated individuals. *See, e.g., Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003). Specifically, the Court concluded that Plaintiff failed to state an equal protection claim, as he did not allege facts that would give rise to a plausible inference that the custody classification level change made by Defendants upon Plaintiff's request for minimum security

10

"camp" placement was the result of purposeful discrimination. *See Iqbal*, 556 U.S. at 680-82. Plaintiff now submits another amended Complaint with new allegations regarding two other inmates at FCI Fort Dix, who allegedly were similarly situated to Plaintiff, and had been treated differently with respect to a lower security level designation for camp placement.[2]

"To prevail on an equal protection claim, a plaintiff must present evidence that s/he has been treated differently from persons who are similarly situated." *Williams*, 343 F.3d at 221; *see also Jean-Pierre v. Bureau of Prisons*, 497 F. App'x 164, 168 (3d Cir. 2012). Proof of disparate impact alone, however, is not sufficient to succeed on an equal protection claim; a plaintiff also must prove that the defendant intended to discriminate. *See Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U .S. 252, 264-66 (1977); *Washington v. Davis*, 426 U.S. 229, 242, 244-45 (1976). Thus, discriminatory intent must be a motivating factor in the decision, even though it need not be the sole motivating factor. *See Village of Arlington Heights*, 429 U.S. at 265-66. Moreover,

---

[2] It would appear that Plaintiff may be asserting a "class of one" equal protection claim in accordance with *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), which provides for "a class of one claim where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in the treatment." *Id.*; *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir.2006).

to prove a lack of rational basis, a plaintiff must negate every conceivable rational basis for his differential treatment. *See Board of Trustees v. Garrett*, 531 U.S. 356, 367 (2001); *Ramsgate Court Townhome Ass'n v. West Chester Borough*, 313 F.3d 157, 160 (3d Cir. 2002).

In this second amended Complaint, Plaintiff's allegations regarding two other inmates, Winestock and McKubbin, does not establish that they were similarly situated to Plaintiff and were treated differently. First, with regard to McKubbin, Plaintiff attaches to his second amended Complaint, Warden Zickefoose's January 24, 2012 response to McKubbin's administrative remedy in which McKubbin challenged the placement of a Greater Severity PSF on him upon his request for a lesser security transfer. Warden Zickefoose upheld the increased PSF despite an earlier classification to a minimum security level in 2011, observing that a review of McKubbin's instant offense "revealed a seriousness that would require greater security at this time." (Dkt. # 6-1, Ex. 1.) Specifically, the Warden noted that McKubbin had been identified as a supervisor in a drug organization and carried weapons for the organization, consistent with BOP Program Statement 5100.08. (*Id*.) McKubbin was denied "camp" placement just like Plaintiff for drug offense activity that would warrant a greater security risk than an

12

inmate's assigned security level. Consequently, this newly added reference to Inmate McKubbin does not support an equal protection claim.

Second, Plaintiff refers to inmate Winestock, alleging that Winestock was allowed camp placement despite an offense level enhancement for a leadership role in a drug offense that involved significantly more drugs than Plaintiff's drug offense. Nevertheless, Plaintiff admits that Winestock is not in a minimum security camp and is housed at the FCI Elkton in Ohio. (Dkt. # 6-1, ¶ 9.)

Moreover, with regard to security level and placement decisions that are based on individual factors and histories, it is hard to imagine that any inmate would be considered similarly situated. Indeed, Petitioner's dubious reference to Winestock's assignment to prison camp is insufficient to support an equal protection claim because decisions regarding security classifications "may legitimately be informed by a variety of an individual's characteristics" that would warrant different treatment for inmates based on valid penological concerns. *Rowe v. Cuyler*, 534 F. Supp. 297, 301 (E.D.Pa. 1982), *aff'd*, 696 F.2d 985 (3d Cir. 1982)(unpublished disposition)("it is difficult to believe that any two prisoners could ever be considered 'similarly situated' for the purpose of judicial review on equal

protection grounds of broadly discretionary decisions [such as eligibility for prison pre-release programs and camp placement programs] because such decisions may legitimately be informed by a broad variety of an individual's characteristics"). *See also Lyon v. De La Jour*, No. 12-7671-ABC(E), 2013 WL 140243, *5 (C.D.Cal. Jan. 9, 2013).

In *Lyon*, the district court dismissed petitioner's equal protection claim relating to denial of parole because petitioner could not show he was intentionally treated differently from other similarly situated parole applicants. The court discounted petitioner's reference to cases where other inmates allegedly were granted parole because no two prisoners could be deemed "similarly situated" given their individual histories and characteristics that necessarily inform parole decisions, which are discretionary and legitimately fact sensitive. *Id.; see also Iwanicki, Pennsylvania Board of Probation and Parole*, No. 2:12-192, 2013 WL 302207, *8, n.11 (W.D.Pa. Jan. 25, 2013)("in making its individualized determinations concerning the many convicts who come before the Board, it is difficult to imagine that as to the many unique individual characteristics of each candidate for parole, any one candidate is truly 'similarly situated' to any other candidate such that treating one differently results in treating 'similarly situated' individuals

differently because they are, in fact, not 'similarly situated.'"); *Remsen v. Holland*, No. 12-00731-BAM-HC, 2012 WL 5386347, *5 (E.D.Cal. Nov. 1, 2012) (in light of discretionary and "highly fact bound" nature of parole decision, and legal standards governing parole decision, "the histories of other prisoners do not establish that Petitioner was similarly situated with other prisoners or tend to show any invidious discrimination that would be protected under the federal Equal Protection Clause").

In fact, with regard to discretionary decisions such as parole, security classification and placement, courts in the Third Circuit have found it improbable that prisoners can be found to be similarly situated to one another for equal protection purposes, under any circumstances. *See Grejda v. Longley*, 2012 WL 2861733, *14 (W.D.Pa. Jun. 20, 2012)(citing *Rowe v. Cuyler*, *supra*; *Johnson v. Paparozzi*, 219 F.Supp.2d 635, 644 (D.N.J.2002); Bagwell v. Brewington-Carr, 2000 WL 1728148, at *19 (D.Del. Apr.27, 2000), *aff'd*, 33 F. App'x 647 (3d Cir. 2002); *Watkins v. Horn*, 1997 WL 566080 at *4 (E.D.Pa. Sept.5, 1997); *Adams v. McAllister*, 798 F. Supp. 242, 246 (M.D.Pa.), *aff'd*, 972 F.2d 1330 (3d Cir. 1992). Thus, Plaintiff cannot meet his burden of demonstrating that he was similarly situated

to other inmates who allegedly received more favorable treatment than he.

Further, even assuming that Plaintiff had provided evidence showing that he had been treated differently than other similarly situated individuals, Plaintiff has provided no facts to indicate that Defendants' denial of camp placement for Plaintiff was intentional and purposeful discrimination with no rational basis for the difference in treatment. This Court cannot ignore the BOP's decision regarding the increase in Plaintiff's security level and denial of camp placement, which was legitimately informed by Plaintiff's offense history in conformity with the BOP's Program Statement 510.08. (Dkt. # 6-1, Ex. 3.) While Plaintiff insists that he was a wholesaler not subject to a "greatest severity" designation, the offense history he provides with his amended Complaint (namely, excerpts from Plaintiff's presentence report) is strewn with numerous facts to support the BOP's decision that Plaintiff had a leadership role in his instant offenses that would appropriately negate a lower security designation as argued by Plaintiff for placement in a minimum security camp facility. (*Id.*, Ex. 2.)

Consequently, Plaintiff cannot show that the BOP's decision was the result of purposeful discrimination where it was consistent with Program Statement 5100.08. *See DeHart v. Horn*,

227 F.3d 47, 61 (3d Cir. 2000) (if an infringement on a prisoner's equal protection rights is reasonably related to a legitimate penological interest, the prison regulation will be upheld); *see also Ryan v. Scism*, 474 F. App'x 49, 52-53 (3d Cir. 2012) (despite mention of two other inmates who received a lesser sanction than petitioner for the same prohibited act, the court denied the equal protection claim because petitioner failed to show that the inmates were similarly situated to him, and petitioner could not dispute that he was sanctioned in conformity with the regulation); *Hall v. Zickefoose*, 448 F. App'x 184, 187 (3d Cir. 2011) (same); *Millard v. Hufford*, 415 F. App'x 348, 350 (3d Cir. 2011) (per curiam) (same).

Therefore, because Plaintiff has not pled a sufficient factual basis for claiming intentional discrimination and has failed to distinguish himself from similarly situated inmates, the second amended Complaint does not state a claim for an equal protection violation. Accordingly, the second amended Complaint will be dismissed without prejudice. *See Solan v. Zickefoose*, No. 11-1895 (JBS), 2013 WL 1007665, *6-7 (D.N.J. Mar. 11, 2013)

## V. CONCLUSION

For the reasons set forth above, Plaintiff's motion to re-open this case is granted. However, the second amended Complaint will be dismissed without prejudice, pursuant to 28

U.S.C. §§ 1915(e)(2)(b)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted at this time.  An appropriate order follows.

                                       **s/ Jerome B. Simandle**
                                       JEROME B. SIMANDLE, Chief Judge
                                       United States District Court

Dated: **June 25, 2013**